Chandler S. Knight, J.
The defendant was convicted by a Court of Special Sessions in the Town of Root of speeding in excess of 60 miles an hour on the New York State Thruway, in violation of section 2-a of article 4 of the Thruway Rules and Regulations. (N. Y. Off. Comp. of Codes, Rules & Regulations [11th Cum. Supp.], p. 468.)
The defendant appealed to this court by filing an affidavit in which he enumerated alleged errors in the proceeding and *12 claimed that the People failed to establish his guilt beyond a reasonable doubt.
Upon the trial the People introduced evidence that the defendant drove his automobile at a speed of 76 miles an hour through a radar zone which had been set up by two State Troopers. In addition, the troopers testified from visual observation that the defendant was traveling at a speed of 76 miles an hour. The evidence was sufficient to qualify them to judge speed. Qualified individuals at appropriate observation posts have always been allowed to state opinions as to speed (People v. Dusing, 5 N Y 2d 126).
Trooper Van Gura claims to be an expert in the operation of radar equipment which is designed to measure the speed of a moving automobile. He attended a radar school in Connecticut and one in Albany and has worked with radar for more than a year and he was, in the opinion of this court, qualified to state an opinion as to the accuracy as well as to the operation of the radar equipment. He testified that the radar set was inspected and tested by him for accuracy several times on the day of the defendant’s arrest. During his cross-examination the attorney for the defendant recognized the witness as an expert. Questioning the witness he said: “ I am just a layman and you are an export * * * tell me exactly how that radar works ” and “you testified here as an expert, did you not!” The witness answered in the affirmative.
One of the tests employed of the accuracy of the radar equipment was driving the automobile of the Trooper Wolf through the radar zone and comparing the reading on the radar equipment with that of his speedometer. The test of radar equipment for accuracy by the speedometer of an automobile, which itself had not been tested, or, if tested, no proof thereof having been introduced, is no evidence of accuracy. Such evidence is admissible, but would be insufficient to sustain a conviction for speeding without additional evidence. (People v. Heyser, 2 N Y 2d 390.) There was other evidence of accuracy. It was also tested by the tuning-fork method. This test showed the equipment to be working accurately.
The defendant offered no evidence that this method of testing the radar was improper or inadequate or that the radar equipment itself was inadequate or defective. The reliability of radar for measuring speed has been recognized for several years (People v. Magri, 3 N Y 2d 562), wherein the court said: “ the time has come when we may recognize the general reliability of the radar speedometer as a device for measuring the speed of a moving vehicle ”.
*13 The defendant objected to the .admission 0f several, exhibits, but whether or not a proper foundation was laid for the admission of the exhibits, they were not prejudicial to the defendant. The exhibits were mere cumulative evidence of the facts which the witness had already testified.
The defendant, in his affidavit of errors, contends that there was no proof of the existence or validity of a statute or rule which the defendant was alleged to have violated, and that no proof thereof was offered or introduced in evidence. There is no statute establishing the rate of speed allowed on the Thruway. No statute or rule governing the rate of speed was submitted to the trial court. The question therefore arises, where does the trial or appellate court or attorneys or the public look for the Thruway speed regulations'?
The New York State Thruway Authority is authorized to promulgate rules and regulations for use on the Thruway (Public Authorities Law, § 361), and specifically to establish maximum and minimum speed limits at which vehicles may proceed thereon (Vehicle and Traffic Law, § 1620). The Thruway Authority did promulgate Rules and Regulations for the Use and Occupancy of the Thruway System and they were filed with the Secretary of State on January 28, 1955. The rules and regulations were subsequently amended on several occasions and the amendments were duly filed with the Secretary of State. Those rules contain a provision that “ a rate of speed on the Thruway system by any vehicle in excess of 60 miles per hour shall be unlawful (Thruway Rules & Regulations, art. 4, § 2-a).
As far as tiffs court can discover, the rules were never published or distributed to the courts or to practicing attorneys or the Judges of the State. However, a trial court, in its discretion, can take judicial notice of “ a rule or regulation of an executive department, public board, agency or officer of this state ” (Civ. Prac. Act, § 344-a).
In this case the trial court found the defendant guilty of driving at a speed in excess of 60 miles an hour and it must, therefore, be assumed that the trial court, in its discretion, took judicial notice of the Thruway rules limiting the speed of automobiles to 60 miles an hour.
The question raised here is, how was the defendant to know of the maximum speed allowed on the Thruway. Neither he nor the traveling public is presumed to know the rate of speed established by the Thruway Authority. It was intended by the Thruway Authority that this defendant and all other persons using the Thruway would be informed of speed limits by appropriate signs posted along the highway. This is indicated by *14 subdivision 1 of article 4 of the Thruway Rules and Regulations which provide that “ no person shall fail, neglect or refuse fó comply with any traffic signs, signal or device erected or displayed by the Thruway Authority on the Thruway System ”.
The People offered no evidence that signs had been erected or displayed indicating the existence and limit of the 60 miles an hour speed regulation established by the Thruway Authority.
That was a fatal omission. A person should not be convicted for failure to observe and comply with the speed fixed by the Thruway Authority and directed by it to be indicated on traffic control signs without proof that such signs were actually posted for the defendant to see and observe.
The failure of the People to allege and prove the erection and display of any traffic speed signs along the Thruway between the place where the defendant entered the Thruwáy and the place of his arrest requires the judgment of conviction to he reversed.
The judgment of Conviction is reversed, the information dismissed, the defendant discharged, the fine remitted and the record of conviction removed from the defendant’s license.