STATE of Missouri, Respondent,

v.

Peter RUDDY, Appellant.

No. WD 47394.

Missouri Court of Appeals,
Western District.

March 15, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

**518**

Brian J. Gepford, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

Peter Ruddy (Ruddy) appeals his conviction on two counts of delivery of a controlled substance in violation of § 195.211, RSMo Supp.1992, as an aider and abettor, and asserts the denial of his motion to acquit at the close of the State's evidence was erroneous. Ruddy was sentenced to two concurrent five year sentences.

Ruddy lived in St. Joseph, Missouri and was a shopping mall manager. Also employed at the shopping mall was his friend Linda Fabiani (Fabiani), who dealt drugs. Fabiani, at the time pertinent to the case at bar, was temporarily housing her dog at Ruddy's home. To facilitate the care of her dog she had been given a key to Ruddy's home. The evidence indicated she also used the home several times to sell drugs; she did not use her apartment because she did not want her children to be present.

Simpson, a confidential police informant for the Buchanan County Drug Strike Force, agreed to purchase cocaine from Fabiani. The transactions were under surveillance and were taped by the police. Simpson called Fabiani and arranged to purchase cocaine at Ruddy's home on April 22, 1992. The police supplied half of the money to Simpson, and Fabiani "fronted" the other half. Simpson was to pay the balance later. Simpson was wired with an audio recording device which taped the drug transaction. Ruddy and Simpson engaged in conversation until Fabiani arrived. The conversation between Ruddy and Simpson indicated Ruddy was aware that Simpson was waiting for Fabiani to purchase drugs. The conversation also demonstrated Ruddy was familiar with Fabiani's supplier and how she obtained the drugs. During the actual transaction between Simpson and Fabiani, Ruddy left the room. Simpson paid the rest of the money he owed Fabiani for the drugs on the following day.

Several phone calls between April 23rd and 27th between Ruddy and Simpson were taped. These conversations were regarding the next drug transaction.

On April 27, 1992 Fabiani arranged for a second delivery of cocaine to Simpson which was to occur again at Ruddy's. Ruddy was not present during the second transaction.

Fabiani testified at trial Ruddy knew she stored cocaine in his home, took phone messages for her from Simpson regarding the sales, and arranged the time of sale with her so neither his roommate nor other persons would be present during her transactions with Simpson. Ruddy admitted to knowing the drugs were kept in his home and that the transactions were to take place there.

In reviewing a trial court's denial of a defendant's motion for acquittal at the close of all the evidence the court will view the evidence in a light most favorable to the state, and the state will be given the benefit of all reasonable inferences. *State v. Thomas*, 529 S.W.2d 379, 383 (Mo.1975). This court holds there was sufficient evidence of

Ruddy's involvement in the drug transactions pursuant to 195.211, RSMo Supp.1992 to deny an acquittal at the close of the State's evidence.

§ 195.211 provides in pertinent part: 1. Except as authorized by sections 195.-005 and 195.425, it is unlawful for any person to distribute or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute deliver, manufacture, or produce a controlled substance.

. . . . .

Furthermore, aiders and abettors who act with a "common purpose with active participants in a crime incur criminal liability by any form of affirmative advancement of the enterprise." *State v. LaRue*, 811 S.W.2d 40, 44–45 (Mo.App.1991). Indicia of aiding and abetting includes presence at the crime scene and association with others involved with the offense before, during and after the commission of the crime. *Id* at 45; *State v. Dotson*, 635 S.W.2d 373, 373–74 (Mo.App.1982).

The evidence at the close of the state's evidence indicated Ruddy knew Fabiani sold drugs and that she kept them at his home. Fabiani testified that Ruddy was aware of what was going on at his home and that he never told her he could not keep her drugs there. Furthermore, it indicated Ruddy knew after he arrived home on April 22, 1992 that a drug sale was going to transpire at his home and that he never tried to prevent it.

The taped conversation between Simpson and Ruddy admitted into evidence indicates Ruddy facilitated the sale by 1) inviting Simpson in to wait for Fabiani while she picked up the drugs 2) discussing Simpson's lack of money to pay for two ounces of cocaine but rather he could only pay for one. Ruddy suggested perhaps Simpson could pay her the other half of the money later, i.e., "that's what I'd do" type of advice. Ruddy told Simpson that Fabiani was going to be late because Al, her supplier, was running late "that's why she's not here." He further explained that Al transported the drugs himself "I know he does drive it up here, because he was out of town, and then brings it into town. . . ." Ruddy further explained Al had to get more drugs because he was out, "and that's maybe why Al was completely out. He'll set so much back for this one and that one, and he'll keep it set aside for who ever and then, I think they went and got a whole shit load again. . . ." The conversation then turned to the sale which was to transpire that evening.

Simpson (S): I got a fucked up situation tonight.

Ruddy (R): Why?

S: On the money, did Linda tell you about that? I supposed to be gettin' two ounces, and I told my mom I was coming over, . . . . I usually carry around $1600–1700 so I had enough to go ahead and get one, and uh, and that's why I was trying to get back a hold of Linda. . . .

R: So your just going to be little short on it?

S: Well,, I'm just gonna get, no, I got back a hold of her finally and told her we can either wait to tomorrow and get both of 'em or I can just get one tonight, and get the other one tomorrow. She said o.k. we'll do that.

R: So you gotta go through all of this again?

S: It's a pain, kinda a pain, ain't it?

R: I'd just say give me the two and I'll give you

S: Well, I didn't want to do that, they don't know me and I don't want to put Linda on the spot like that. Al might not like it.

R: Oh, fuck.

. . . . .

R: Well, she could just say to Al, well I don't want to go through this whole thing again, you know.

. . . . .

The evidence also indicated Ruddy knew there was going to be another transaction on April 27th. Ruddy, relayed messages between Fabiani and Simpson which facilitated the deal. Simpson testified he called Ruddy regarding the April 27th transaction. During one of their taped conversations on April 27th, Ruddy told Simpson "It's all ready to go." After which Simpson said he wondered if "she got two or one . . ." Ruddy respond-

ed "Two." During another conversation, Simpson told Ruddy he had lost a lot of money gambling and he only had enough for one ounce of cocaine and asked Ruddy to "kinda explain that (the money situation) to her and see o.k.?." Ruddy agreed to talk with Fabiani for him.

Fabiani also testified that she discussed the transactions with Ruddy after the April 22 transactions so they could be arranged when Ruddy's roommate was not home.

Additionally, on the tape of the April 22, transaction the conversation showed Ruddy's assistance in setting up a plan for Fabiani to get the money the following day at Ruddy's office but it is not clear whether or not that portion of the tape was played to the jury. Even absent this evidence and without Ruddy's testimony, there was sufficient evidence in the record to deny the motion for acquittal. The evidence demonstrates Ruddy was active in his capacity as an aider and abettor rather than as a passive observer as argued on appeal. *See State v. Dotson,* 635 S.W.2d 373 (Mo.App.1982) (presence plus some affirmative participation is sufficient to establish defendant is an aider and abettor); *But see State v. Perez,* 826 S.W.2d 61 (Mo.App.1992) (No proof appellant associated himself with the criminal venture where his only activity was being present at the drug sale).

The judgement is affirmed.

All concur.